_____

No. 95-2210EA
_____

United States of America,          *
                                   *
        Appellee,                  *
                                   *   On Appeal from the United
    v.                             *   States District Court
                                   *   for the Eastern District
                                   *   of Arkansas.
James Alfred Miller,               *
                                   *
        Appellant.                 *

_____

Submitted: June 10, 1996

Filed: August 6, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit
    Judge, and ROSENBAUM,* District Judge.
_____

RICHARD S. ARNOLD, Chief Judge.


    James Alfred Miller was convicted of three drug-related felonies and
sentenced to a prison term of twenty-four years and four months.  We affirm
these convictions, but remand this case to the District Court for
resentencing.


I.


    At trial, the government introduced evidence showing that from
January 1993 through April 1994, James Miller sold methamphetamine

_____

    *The Hon. James M. Rosenbaum, United States District Judge for
the District of Minnesota, sitting by designation.

to a number of people. One of Miller's principal buyers was Don Roe, who was a drug dealer. Roe testified that he generally bought four ounces of methamphetamine at a time, at a cost of $5,000 per purchase. On two occasions, Roe purchased one-pound quantities. The defendant sometimes "fronted" these drugs, that is, he gave them to Roe and did not demand payment until a later date. Roe testified that on September 5, 1993, he and Jackie Bingham Williams went to Miller's house to buy methamphetamine. Roe took this purchase back to his home, where the police discovered it later that day.

A number of witnesses corroborated Roe's testimony. Lisa Gulledge stated that she accompanied Roe, whom she described as a well-known drug dealer, on trips to Miller's house to purchase methamphetamine. Mark Kenyon, who sold methamphetamine for Roe, testified that in early 1993, he and Roe purchased methamphetamine from Miller. Donna Carter said that she bought methamphetamine from Roe, and had seen the defendant dispense this drug to Gulledge, Kenyon, and Kathy Reeves. Also, Jackie Bingham Williams confirmed Roe's account of the events of September 5, 1993.

Two other important witnesses were Jerry Wilson and Veronica Simone. Wilson testified that, beginning in the spring of 1993, he purchased one-eighth of an ounce of methamphetamine from Miller every month. Eventually, he started buying a pound at a time. The defendant sometimes fronted these drugs to Wilson, who resold them. Veronica Simone testified that when she was seven and one-half months' pregnant, Miller sold her methamphetamine.

The jury convicted Miller of conspiring to distribute and to possess with intent to distribute methamphetamine, 21 U.S.C. § 846, distributing methamphetamine, 21 U.S.C. § 841(a)(1), and distributing methamphetamine to a pregnant person, 21 U.S.C. § 861(f). Determining that Miller was the "organizer or leader of a criminal activity that involved five or more participants,"

U.S.S.G. § 3B1.1(a), the District Court increased Miller's base offense level by four levels and sentenced him to a prison term of twenty-four years and four months.

II.

On appeal, Miller argues that there was insufficient evidence to support his conspiracy conviction, and that the District Court erred by refusing to grant his request for a continuance and by not permitting a number of proposed defense witnesses to testify. Miller also asserts that in sentencing him, the District Court should not have applied a four-level enhancement.

A.

We begin with Miller's claim that the government did not produce enough evidence to support his conspiracy conviction. At trial, the government introduced evidence that Miller sold one-pound quantities of methamphetamine, worth $10,000 each, to Don Roe, a known drug dealer, and to Jerry Wilson. The government argues that the jury could have inferred that because Miller made such large sales, he knew that his purchasers were reselling the methamphetamine. According to the government, the fact that Miller "fronted" the methamphetamine to Roe, Wilson, Mark Kenyon, and Kathy Reeves also shows that Miller knew that the methamphetamine was being resold, because the only way that Miller's buyers could have paid him back was to resell the drugs.

To convict Miller of conspiracy, the government had to "establish that an agreement to engage in distributing drugs existed between two or more people, including the defendant." United States v. Rodgers, 18 F.3d 1425, 1428-29 (8th Cir. 1994). Although "numerous sales of small amounts . . . for personal use are insufficient to support a [conspiracy] conviction," United States v. Eneff, 79 F.3d 104, 105 (8th Cir. 1996), we have held

-3-

that "evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of conspiracy to distribute."  <u>Ibid.</u>[1]  The government did show that Miller sold resale quantities of drugs.  This evidence was, therefore, sufficient to convict Miller of conspiracy.

B.

Next, Miller asserts that the District Court erred by not granting his request for a continuance.  There is "little question that a district court has wide discretion in ruling on motions for continuances, and a court's exercise of that discretion will rarely be overturned."  <u>United States v. Pruett</u>, 788 F.2d 1395, 1396 (8th Cir. 1986).  We do not believe that the District Court abused its discretion in this case.

Miller based his request for a continuance, which he made on the morning of trial, on three grounds.  First, Miller noted that the prosecution had not disclosed that its principal witness, Don Roe, had been arrested in 1993 for drug possession and had tried to bribe the police officers who had arrested him.  (The government says that its failure to disclose these facts was inadvertent.)  Miller's counsel did discover this information the week before trial and was able to use it to cross-examine Roe.  Miller suffered

---

[1]A number of circuits disagree with this view.  See <u>United States v. Lennick</u>, 18 F.3d 814, 819 (9th Cir.) ("[t]o show a conspiracy, the government must show not only that [the defendant] gave drugs to other people knowing that they would distribute them, but also that he had an agreement with these individuals to so further distribute the drugs."), <u>cert.</u> <u>denied</u>, 115 S. Ct. 162 (1994); <u>United States v. Lechuga</u>, 994 F.2d 346, 347 (7th Cir.) (en banc) (the sale of "large quantities of controlled substances, without more, cannot sustain a conspiracy conviction"), <u>cert. denied</u>, 114 S. Ct. 482 (1993); <u>United States v. Howard</u>, 966 F.2d 1362, 1364 (10th Cir. 1992) ("[t]he huge quantity of crack cocaine involved in this case permits an inference of conspiracy, but by itself this is not enough to convict defendant").  Nevertheless, as a panel, we are not free to depart from our precedents.

-4-

no prejudice from the Court's failure to grant a continuance.

The same is true of the other two grounds on which Miller based his motion for a continuance -- that the prosecution had not told Miller until the day before trial that Charlotte Kirks, a government witness, had a criminal record, and that the prosecution did not disclose that Jackie Bingham Williams, another government witness, had lost custody of her child. In each case, the prosecution's failure to disclose the information, which it says was inadvertent, did not interfere with the ability of Miller's counsel to use these facts during cross-examination. Thus, the District Court's refusal to grant a continuance was not an abuse of discretion.

C.

We now address Miller's evidentiary claims. The District Court did not permit Miller to call a number of witnesses who, Miller asserts, would have impeached the testimony of Don Roe. Weldon Davis, the Jailor of Pulaski County, Arkansas, would have testified that on September 6, 1993, when Roe was detained on state drug charges, Roe told a fellow prisoner that only two people, neither of whom was Miller, knew about the pound of methamphetamine the police had discovered in his house on September 5. Roe testified that he never made this statement.

We believe that the District Court erred by refusing to allow the defendant to question Weldon Davis. A party may introduce extrinsic evidence of a witness's prior inconsistent statement if the witness is given a chance to explain the inconsistency, the opposing party is afforded an opportunity to question the witness about the inconsistency, and the inconsistent statements are material to the substantive issues of the trial. Fed. R. Evid. 613(b); United States v. Roulette, 75 F.3d 418, 423 (8th Cir. 1996). Miller's lawyer asked Roe to explain his prior statement,

and the government had the opportunity to question Roe on redirect examination. Also, Weldon Davis's testimony would have been relevant to whether Miller sold Roe the methamphetamine that the police found in Roe's house -- certainly a substantive trial issue.

However, this error does not cause us to reverse Miller's conviction. Jackie Bingham Williams testified that she accompanied Roe on his trip to Miller's house to purchase the one pound of methamphetamine that the police discovered on September 5. Williams's testimony corroborates Roe's account of the events of September 5 and leads us to conclude that the District Court's refusal to allow Weldon Davis to testify was harmless error.

The defendant also asserts that he should have been permitted to call as witnesses three police officers who would have testified that Roe had attempted to bribe them. The officers' testimony would not have shown that Roe had made an inconsistent statement material to whether Miller was guilty of the crimes for which he was being tried. Instead, the officers' statements would have been used purely to attack Roe's character. Trials are about charges in the indictment, not the character of the witnesses. Thus, although Federal Rule of Evidence 608(a) permits a party to introduce evidence regarding a witness's reputation for truthfulness, Rule 608(b) "does not permit specific instances of a witness's conduct to be proved by extrinsic evidence." United States v. Johnson, 968 F.2d 765, 766 (8th Cir.), cert. denied, 506 U.S. 980 (1992) (citation omitted). We agree with the District Court that the proposed testimony of the three officers was inadmissible.

D.

Finally, Miller argues that the District Court should not have given him a four-level enhancement for being the "organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). Typically, this enhancement

applies to a defendant who employs or otherwise arranges for intermediaries to sell his drugs. See, e.g., United States v. McMullen, 86 F.3d 135, 138 (8th Cir. 1996); United States v. Logan, 54 F.3d 452, 456 (8th Cir. 1995); United States v. Greene, 995 F.2d 793, 802 (8th Cir. 1993). We have, however, "broadly interpreted the terms `organizer' and `leader,'" United States v. Maxwell, 25 F.3d 1389, 1399 (8th Cir.), cert. denied, 115 S. Ct. 610 (1994). Thus, the defendant need not "directly control" his intermediaries. Ibid. But, if the words "organizer" and "leader" are to have their ordinary meaning, a defendant must do more than sell for resale. See United States v. Rowley, 975 F.2d 1357, 1364 n.7 (8th Cir. 1992) ("we have always required evidence that the defendant directed or procured the aid of underlings").

Miller was not the "organizer" or "leader" of a conspiracy. Although Miller sold large enough quantities of methamphetamine that it is reasonable to infer that he knew the drugs were being resold, Miller did not have any involvement in the resales. There is no evidence that Miller controlled his buyers in their resale of the methamphetamine. The government contends that the four-level enhancement should, nevertheless, apply because Miller supplied the drugs that his co-conspirators later resold. But, as the Fifth Circuit has explained, controlling property does not make one an "organizer" or a "leader":

> Applying a plain-meaning approach to "leader" and "organizer," we note that their definitions relate to supervision of people only. Leader is defined as a person who leads as a commander. Webster's Third New International Dictionary 1283 (1981). Organizer is defined as a person who travels for the purpose of establishing new organizations. Id. at 1590. A commander commands people, and organizations are composed of people. Unlike a manager, a leader's or organizer's actions must directly affect other people. Consequently, a leader or organizer must control or influence other people.

United States v. Ronning, 47 F.3d 710, 712 (5th Cir. 1995).  We therefore agree with Miller that the District Court should not have applied a four-level enhancement on this record.

## III.

For these reasons, we affirm Miller's convictions, vacate his sentence, and remand this case to the District Court for resentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.