United States Court of Appeals

FOR THE EIGHTH CIRCUIT

_____

No. 96-2566
_____

United States of America,          *
                                    *
          Appellee,                 *
                                    *
     v.                             *
                                    *
Brian Matlock, also known as        *
"Slim,"                             *
                                    *
          Appellant.                *


_____
                                    Appeals from the United States
No. 96-2618                         District Court for the
_____                         District of Minnesota.

United States of America,          *
                                    *
          Appellee,                 *
                                    *
     v.                             *
                                    *
Tony Howze, also known as           *
Fatwood and Fats,                   *
                                    *
          Appellant.                *


_____

No. 96-2619
_____

United States of America,          *
                                    *
          Appellee,                 *
                                    *
     v.                             *
                                    *
Michael Lipscomb,                   *
                                    *
          Appellant.                *

_____

Submitted:  December 10, 1996

Filed:  April 1, 1997
_____

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.
_____

MAGILL, Circuit Judge.

Brian Matlock, Tony R. Howze, and Michael Lipscomb were arrested on drug conspiracy charges.  Matlock and Howze pled guilty to conspiracy charges for distribution and possession with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846 (1994). Matlock also pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (1994).  Lipscomb was convicted by a jury of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1994), and aiding and abetting an attempt to possess with intent to distribute cocaine and cocaine base, in violation of 18 U.S.C. § 2 (1994) and 21 U.S.C. §§ 841(a)(1), 846.  Matlock and Howze both argue that the district court[1] erred in applying the sentencing guidelines.  Lipscomb argues that there was insufficient evidence to convict and challenges the admission of certain testimony.  We affirm.

**I.**

Matlock and Howze were co-leaders of a cocaine distribution network that operated in Minneapolis, Minnesota from at least

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

-2-

December 1994 through June 10, 1995.  See Matlock Plea Agreement (Jan. 26, 1996) at ¶¶ 1, 9A; Howze Plea Agreement (Feb. 2, 1996) at ¶¶ 1, 7.  On at least two occasions, Matlock and Howze attempted to possess with intent to distribute cocaine and cocaine base sent to them by Marvin Creque, their supplier in Florida.  Id. at ¶ 1; Matlock Plea Agreement at ¶ 1. On each occasion, Creque sent the package of drugs by express mail.

The first package, which contained three kilograms of cocaine and three ounces of cocaine base, was intercepted and seized by law enforcement officials on May 5, 1995, as part of an ongoing drug investigation.  This package was never delivered.

On June 9, 1995, law enforcement officials intercepted the second package sent by Creque.  After replacing the bulk of the drugs with a noncontrolled substance, an undercover police officer posing as a delivery person delivered the package, as addressed, to the residence of Howze's stepmother, Patricia Lomax.  Lipscomb received the package at Lomax's residence and signed for it using a false name.  The police then arrested Matlock, Howze, Lipscomb, and Lomax.  In addition, the police arrested several others involved in the distribution of the cocaine as well as Matlock's live-in girlfriend, Yolanda Washington, who helped Matlock prepare the cocaine for distribution.[2]

Matlock and Howze pled guilty to drug conspiracy charges.  Matlock also pled guilty to being a felon in possession of a firearm.  Pursuant to individual plea agreements, both Matlock and
Howze stipulated to being leaders of a drug conspiracy, and the parties stipulated that Matlock and Howze should each receive a

---

[2]Creque remains a fugitive from the law.

two-level upward sentencing adjustment under U.S.S.G. § 3B1.1(c) because of their leadership roles.

In Matlock's plea agreement, the government also agreed to move for a downward sentencing departure pursuant to U.S.S.G. § 5K1.1 if Matlock substantially assisted the government in the prosecution of his codefendants. The plea agreement further provided that "the government . . . will decide whether the defendant has cooperated sufficiently to warrant a motion for downward departure." Matlock Plea Agreement at ¶ 5.

At trial, Lipscomb was convicted by a jury of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base. He was also convicted of aiding and abetting an attempt to possess with intent to distribute cocaine and cocaine base. His codefendant at trial, Lomax, was acquitted.

The evidence against Lipscomb consisted mainly of wiretapped telephone conversations. One such conversation involved Matlock telling Lipscomb to deliver a quantity of cocaine to a particular customer known as "Larry Love." Another conversation involved a discussion of the June 9 drug shipment that law enforcement officials later intercepted and delivered to Lipscomb at Lomax's residence. In addition, law enforcement officials searched Lipscomb's apartment and seized a list containing the names of known cocaine customers followed by numbers denoting drug quantities as well as an electronic scale of the type commonly used in weighing drugs.

The government also called Matlock to testify pursuant to his plea agreement against Lipscomb and Lomax. He initially refused to enter the courtroom when called as the government's first witness. When Matlock finally did take the stand, the testimony he gave

minimized the roles played by both Lipscomb and Lomax. His trial testimony was far less incriminating and far less helpful to the government than the sworn testimony he gave at his plea hearing. Moreover, the day after the trial, Matlock called the prosecuting attorney and left a message on his answering machine. In the message, Matlock informed the prosecuting attorney that "yesterday, uh, was practically a act. I mean, I didn't want nobody to see uh --as well as, as well as some concern as well--but, but basically it was a act. You know, facing everybody out there, uh, I had to show some kinda, some kinda somethin' yeah." Message from Matlock (Feb. 13, 1996), reprinted in Appellee's App. at 10.

In response to Matlock's trial testimony, the government sought and obtained permission, over Lipscomb's objections, to read excerpts to the jury from Matlock's prior plea hearing testimony. The plea hearing testimony incriminated both Lipscomb and Lomax. In particular, Matlock had previously testified at his plea hearing that Lipscomb had delivered drugs for him to Larry Love and that Lipscomb went to Lomax's residence to receive a shipment of drugs that would later be distributed.

At sentencing, the district court increased both Matlock's and Howze's offense levels by four levels for their leadership roles in the conspiracy pursuant to U.S.S.G. § 3B1.1(a), notwithstanding the government's stipulation to a two-level enhancement. Both Matlock's and Howze's plea agreements expressly provided that the district court was not bound by the stipulations of the parties. Matlock Plea Agreement at ¶ 6; Howze Plea Agreement at ¶ 4.

At sentencing, the district court found that the following five individuals participated in the conspiracy: Matlock, Howze, Lipscomb, Creque, and Washington. Matlock Sent. Tr. at 20. The court also considered several subdistributors of cocaine that

participated in the criminal activity.  Id.  At Howze's sentencing hearing, the district court referenced his findings in Matlock's sentencing hearing, stating that "this group clearly involved five or more."  Howze Sent. Tr. at 7.  Matlock, Howze, and Lipscomb appeal.

## II.

Matlock and Howze challenge the district court's decision to increase their respective offense levels by four pursuant to U.S.S.G. § 3B1.1(a). Section 3B1.1(a) calls for a four-level increase in a defendant's offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants . . . ."  U.S.S.G. § 3B1.1(a). Matlock and Howze argue that the district court clearly erred when it found that five or more persons were involved in the criminal activity.  We disagree.

We review a district court's finding of the number of persons involved in a criminal activity for clear error.  See United States v. Smith, 62 F.3d 1073, 1079 (8th Cir. 1995), cert. denied, 116 S. Ct. 826 (1996).  For purposes of U.S.S.G. § 3B1.1(a), "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S.S.G. § 3B1.1, comment. (n.1).  The person being sentenced is counted as a participant in determining the total number of participants.  See United States v. Kenyon, 7 F.3d 783, 785-86 (8th Cir. 1993); see also United States v. Logan, 54 F.3d 452, 456 (8th Cir. 1995) ("More than one person in a conspiracy can qualify as a leader or organizer.").  Participants also include intermediaries who sell drugs on behalf of the defendant.  See United States v. Miller, 91 F.3d 1160, 1163-64 (8th Cir. 1996).

Given the participation of Matlock, Howze, Lipscomb, Creque, Washington, and the several subdistributors named by the district court, it was not clearly erroneous for the district court to have found that at least five persons were involved in the criminal activity. Therefore, the district court did not err in applying § 3B1.1(a).

## III.

Matlock argues that the district court erred in denying his motion for an order requiring the government to make a U.S.S.G. § 5K1.1 downward departure motion. Specifically, he argues that the government's refusal to bring a § 5K1.1 motion for substantial assistance was irrational and in bad faith. We disagree.

Under § 5K1.1, the district court can depart downward from the sentencing guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense . . . ." U.S.S.G. § 5K1.1. It is well settled "that the court is without authority to grant a downward departure for substantial assistance absent a government motion." United States v. Kelly, 18 F.3d 612, 617 (8th Cir. 1994) (citations omitted). "The government's refusal to file a substantial-assistance motion is reviewable only when the defendant makes a substantial threshold showing that the refusal was irrational or based on an unconstitutional motive." United States v. Nicolace, 90 F.3d 255, 258-59 (8th Cir. 1996) (citing Wade v. United States, 504 U.S. 181, 185-87 (1992)).

Matlock has not met this burden. Despite a plea agreement obligating Matlock to cooperate in the prosecution of his

codefendants, he initially refused to enter the courtroom when he was called as the government's first witness in the trial of Lipscomb and Lomax. When he finally did testify at trial, he attempted to minimize the roles that Lipscomb and Lomax played in the conspiracy whereas his earlier plea hearing testimony had been far more incriminating. Finally, Matlock admitted that his testimony "was practically a[n] act." Message from Matlock, reprinted in Appellee's App. at 10.

In the plea agreement, the government expressly conditioned its obligation to file a § 5K1.1 motion on the government's discretionary assessment of whether Matlock provided substantial assistance. See Matlock Plea Agreement at ¶ 5. Given his near total lack of cooperation at trial, Matlock has not made a substantial showing that the government's decision to refuse to file a § 5K1.1 motion was irrational or in bad faith. Cf. United States v. Johnigan, 90 F.3d 1332, 1339 (8th Cir. 1996) (holding that the defendant had not made a substantial threshold showing that it was irrational for the government to refuse a § 5K1.1 motion at least in part because "the government . . . expressed the view that the assistance provided by [the defendant] turned out to be unreliable" and "described his assistance as having negative value"); Nicolace, 90 F.3d at 259 (holding that the defendant had not made a substantial threshold showing where the government found his information unhelpful).

## IV.

Pointing to the increased penalties for cocaine base as compared to cocaine, Howze challenges his sentence for distribution and possession of cocaine base on equal protection grounds. Howze's argument lacks merit. See United States v. Macklin, 104

F.3d 1046, 1050 (8th Cir. 1997); United States v. White, 81 F.3d 80, 84 (8th Cir. 1996); United States v. Delaney, 52 F.3d 182, 189 (8th Cir.), cert. denied, 116 S. Ct. 209 (1995); United States v. Clary, 34 F.3d 709, 710-14 (8th Cir. 1994), cert. denied, 115 S. Ct. 1172 (1995).

**v.**

Lipscomb argues that there was insufficient evidence to convict him of drug conspiracy charges and of aiding and abetting charges. We disagree.

When considering a claim that the evidence was insufficient to sustain a verdict, we review the evidence in the light most favorable to the verdict and grant all reasonable inferences in favor of the verdict. United States v. Melina, 101 F.3d 567, 573 (8th Cir. 1996). "We will reverse only if we conclude that a reasonable fact finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." Id. (quotations and citation omitted).

To prove that Lipscomb "engaged in a drug conspiracy, the government must demonstrate that an agreement existed between at least two people; that the defendant knew of the conspiracy; and that the defendant intentionally joined the conspiracy." United States v. Rogers, 91 F.3d 53, 57 (8th Cir. 1996). To prove that Lipscomb engaged in the distribution of cocaine and cocaine base,
the government must show that Lipscomb "knowingly sold or otherwise transferred" cocaine and cocaine base. Id.

Viewed in the light most favorable to the verdict, Matlock's plea hearing testimony and the wiretapped phone conversations were

-9-

sufficient to sustain Lipscomb's conviction for drug conspiracy and distribution.  This evidence proved that Lipscomb delivered cocaine to Larry Love at the behest of Matlock.

To sustain Lipscomb's conviction for aiding and abetting an attempt to possess with intent to distribute cocaine and cocaine base, the government must prove that Lipscomb: (1) "associated himself with the unlawful venture;" (2) "participated in it as something he wished to bring about;" and (3) "sought by his actions to make it succeed."  United States v. Duke, 940 F.2d 1113, 1117 (8th Cir. 1991) (quotations and citations omitted).  Viewed in the light most favorable to the verdict, Matlock's plea hearing testimony, the wiretapped conversations, and the testimony of law enforcement officials who made the controlled delivery proved that Lipscomb went to Lomax's house to receive the express mail package of drugs sent by Creque for distribution by Matlock and Howze.  This evidence is far more than sufficient to sustain the aiding and abetting charges of which Lipscomb was convicted.  Cf. United States v. Roach, 28 F.3d 729, 737 (8th Cir. 1994) (holding that evidence was sufficient to sustain aiding and abetting conviction where videotape evidence and trial testimony, while "not overwhelming," tended to prove the defendant's active participation); Duke, 940 F.2d at 1117 (holding that evidence was sufficient to sustain aiding and abetting conviction notwithstanding that there was only "circumstantial evidence" indicating the defendant's active participation).

**VI.**

Lipscomb challenges the district court's decision to admit portions of Matlock's plea hearing testimony into evidence pursuant to Federal Rule of Evidence 801(d)(1)(A) after Matlock had already

-10-

testified at trial as a government witness.  Under Rule 801(d)(1)(A), a statement is not hearsay if:

> The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) <u>inconsistent</u> with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding . . . .

Fed. R. Evid. 801(d)(1)(A) (emphasis added).  Lipscomb argues that Matlock's plea hearing testimony does not fall within Rule 801(d)(1)(A) because Matlock's plea hearing testimony and his trial testimony were not inconsistent.  We disagree.

In applying Rule 801(d)(1)(A), "inconsistency is not limited to diametrically opposed answers but may be found in evasive answers, inability to recall, silence, or changes of position." <u>United States v. Russell</u>, 712 F.2d 1256, 1258 (8th Cir. 1983) (per curiam) (quotations and citations omitted).  The district court has considerable discretion in determining whether prior statements are inconsistent with trial testimony. <u>Id.</u>; <u>United States v. Thompson</u>, 708 F.2d 1294, 1302 (8th Cir. 1983).

At trial, Matlock attempted to minimize the role played by Lipscomb in the drug conspiracy.  His testimony was far less incriminating and therefore far less helpful to the government than his prior plea hearing testimony.  For this reason, we conclude that the district court did not err in determining that Matlock's statements at trial were sufficiently inconsistent with his prior plea hearing testimony for his plea hearing testimony to be admitted.  <u>Cf.</u> <u>Russell</u>, 712 F.2d at 1258 (holding that "[the witness's] statement on the stand that he could not recall having any contact with [the defendant] around the time he cashed the forged postal money orders is sufficiently inconsistent with his

grand jury testimony for the trial court to admit the previous testimony [under Rule 801(d)(1)(A)]"); Thompson, 708 F.2d at 1302 (holding that "the court did not abuse its discretion in view of [the witness's] recalcitrance").

## VII.

For the foregoing reasons, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.