# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2184

_____

United States of America,                    *
                                              *
        Appellee,                             *
                                              *
    v.                                        *
                                              *
Daniel T. Sherman, also known as             *
Mike Wilson, also known as Mike              *
Willson, also known as Mark Willson,         *
                                              *
        Appellant.                            *

_____

No. 00-2188                    Appeals from the United States
                               District Court for the
_____                    District of Minnesota.

United States of America,                    *
                                              *
        Appellee,                             *
                                              *
    v.                                        *
                                              *
Fortino E. Diaz,                             *
                                              *
        Appellant.                            *

_____

No. 00-2317

_____

United States of America,        *

                                *

        Appellee,        *

                                *

    v.               *

                                *

Robert R. Lohr,        *

                                *

        Appellant.      *

_____

No. 01-1271

_____

United States of America,        *

                                *

        Appellee,        *

                                *

    v.               *

                                *

Vanessa R. Lohr,        *

                                *

        Appellant.      *

_____

Submitted:  June 12, 2001

Filed:  August 21, 2001

_____

Before WOLLMAN, Chief Judge, HAMILTON,[1] MURPHY, Circuit Judges.
_____

WOLLMAN, Chief Judge.

Daniel Sherman, Fortino Diaz, Robert Lohr, and Vanessa Lohr appeal their convictions and sentences stemming from a conspiracy to distribute cocaine and methamphetamine. We affirm.

**I.**

The defendants were convicted after a lengthy trial in district court[2] on charges stemming from their participation in a large drug conspiracy. All four defendants were convicted of conspiracy to distribute cocaine and methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(A-B) and 846 and aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A) and 2. Three other co-defendants entered guilty pleas prior to the trial. Diaz was also convicted of one count of distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and Sherman was additionally convicted of one count of attempting to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(C). Sherman was sentenced to imprisonment for a term of 108 months, Diaz to 360 months, Robert Lohr to 262 months, and Vanessa Lohr to 24 months. In addition, the jury determined that the Lohrs' home was subject to forfeiture under 21 U.S.C. § 853 because it was used to facilitate the Lohrs' drug conspiracy.

---

[1]The Honorable Clyde H. Hamilton, United States Circuit Judge for the Fourth Circuit, sitting by designation.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

Viewed in the light most favorable to the verdict, the evidence presented at trial showed that between 1992 and 1998, Fortino Diaz ran a drug operation based in California that supplied cocaine, methamphetamine, and marijuana to distributors in Minnesota. Sherman and Robert and Vanessa Lohr were three of those distributors, as was Linda Bay, who cooperated with the government and testified at trial as a government witness.

Although drugs were sometimes delivered in person, they were ordinarily shipped by Federal Express from California to Minnesota. Payments were made either by sending large sums of cash by Federal Express or by wiring smaller amounts via Western Union. At various points, Bay purchased cocaine for resale and for her own use directly from Diaz, from Sherman, and from Robert Lohr. She also sold drugs to Robert Lohr. The evidence also showed that Sherman, Bay and Vanessa Lohr were addicted to cocaine during the course of the conspiracy. Sherman, both Lohrs, and Bay sent or wired money to Diaz using their own names and aliases. In the course of the conspiracy, the defendants drew numerous friends and family members into their illegal activities.

At trial, the government's evidence traced hundreds of thousands of dollars that changed hands in the course of the conspiracy. More than $100,000 in drug proceeds were traceable to Sherman, and a total of $278,000 in cash was traceable to the Lohrs despite their efforts to camouflage the cash as proceeds from legitimate business enterprises. Robert Lohr was a major distributor for Diaz, and Vanessa Lohr assisted him in the drug operation. Vanessa Lohr arranged for drugs to be sent to a gas station managed by her friend for Robert Lohr to pick up, and she sent and picked up Federal Express packages containing cash and drugs. A search of the Lohr home recovered $25,000 of drug proceeds in cash, along with Federal Express packages with tracking numbers from the same sequence as those used to ship intercepted drugs. Bay testified that Robert Lohr kept a "stash" of drugs at the home.

Count 1 of the indictment charged all four defendants with conspiracy to distribute more than five kilograms of methamphetamine and more than one kilogram of cocaine. The jury, however, was instructed that it could convict the defendants if it found beyond a reasonable doubt that they were engaged in a conspiracy to distribute the substances even though it did not find the charged drug quantities beyond a reasonable doubt. The verdict did not specify the drug quantity.

## II.

All four defendants challenge the sufficiency of the evidence to sustain their convictions on the conspiracy charge and the aiding and abetting money laundering charge. In addition, Sherman, Diaz, and Robert Lohr challenge the district court's calculation of drug quantities at sentencing, Diaz challenges the district court's sentencing determination that he was a leader or organizer and a manager of the conspiracy, Sherman and Diaz challenge their other convictions, and Robert and Vanessa Lohr challenge the district court's determination that their home was subject to forfeiture.

### A. Conspiracy Charge

All four defendants challenge the sufficiency of the evidence to support their convictions for conspiracy to distribute cocaine and methamphetamine. They do not contest their involvement in buyer/seller relationships. Rather, they challenge the government's evidence that these relationships were part of a larger conspiracy, contending that the government did not submit adequate evidence of an agreement. In addition, Sherman, Diaz, and Robert Lohr contend that the district court erred when it sentenced them on the basis of its findings of drug quantities rather than submitting the question of the quantities to the jury to be determined beyond a reasonable doubt.

## 1. Sufficiency of the Evidence

We have no difficulty in concluding that the evidence adduced at trial was sufficient to establish both the underlying conspiracy and the defendants' participation therein. In reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and take as established all reasonable inferences tending to support the verdict. United States v. Shoffner, 71 F.3d 1429, 1433 (8th Cir. 1995). Reversal is appropriate only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. To sustain the conspiracy conviction, the government must prove (1) that there was a conspiracy, (2) that the defendant knew of the conspiracy, and (3) that the defendant intentionally joined the conspiracy. Id. In other words, the government had to establish the existence of an agreement to engage in distributing drugs between the defendant and at least one other person. United States v. Miller, 91 F.3d 1160, 1162 (8th Cir. 1996).

The government may prove an agreement wholly by circumstantial evidence or by inference from the actions of the parties. Shoffner, 71 F.3d at 1433. "[A] defendant's mere presence, coupled with the knowledge that someone else who is present intends to sell drugs, is insufficient to establish membership in a conspiracy." Id. Once the existence of a conspiracy has been established, however, "'even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement.'" Id. at 1434 (quoting United States v. Agofsky, 20 F.3d 866, 870 (8th Cir. 1994)). "Although 'numerous sales of small amounts . . . for personal use are insufficient to support a [conspiracy] conviction,' we have held that 'evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of conspiracy to distribute.'" Miller, 91 F.3d at 1162 (quoting United States v. Eneff, 79 F.3d 104, 105 (8th Cir. 1996)).

The defendants contend that despite the large quantities of drugs and cash that changed hands, there was no conspiracy to distribute drugs because there was no

underlying distribution agreement. Instead, they argue, their involvement with one another was merely an unorganized series of buyer-seller relationships. We do not agree, for the government's evidence of multiple sales of resale quantities of drugs to the defendants, when viewed in light of telephone records, financial information and evidence of the defendants' attempts to cover up their illegal activities, was more than sufficient to support the jury's conclusion that a conspiracy to distribute drugs existed. See Schoffner, 71 F.3d at 1433-34.

With respect to Sherman, the evidence established that more than $100,000 was wired to Fortino Diaz and his associates from 1993 through 1996 in Sherman's name or in the names of aliases that Sherman used. In addition, phone records and other papers found at Sherman's home demonstrated that he was in contact with Diaz, his son and co-conspirator David Diaz, and both Lohrs. The evidence shows that the conspiracy as a whole was involved in the distribution of cocaine and methamphetamine, and Sherman is liable for the foreseeable conduct of his co-conspirators in furtherance of the conspiracy even if, as he contends, he himself did not distribute methamphetamine. See Rice, 49 F.3d 378, 382-83 (8th Cir. 1995). Accordingly, Sherman's challenge to the sufficiency of the evidence is without merit.

Diaz and Robert Lohr challenge the sufficiency of the evidence to show the underlying conspiracy and to support the conclusion that methamphetamine, as well as cocaine, was distributed through that conspiracy. The record, however, is replete with evidence that a conspiracy to distribute both cocaine and methamphetamine existed and that Diaz and Robert Lohr were deeply involved in it. For example, Linda Bay testified that she sent Diaz up to $11,000 in cash at a time in exchange for drugs, that she sold drugs that she had purchased directly from Diaz and indirectly from him through Robert Lohr, and that the drugs she received included cocaine, marijuana and methamphetamine.

Vanessa Lohr challenges the sufficiency of the evidence to support the conclusion that she was involved in the conspiracy. She maintains that the evidence, as it relates to her, demonstrates merely that she was a buyer and user of cocaine, rather than a member of the conspiracy. Granted that the record establishes that Vanessa Lohr was using large quantities of cocaine during her involvement in the conspiracy, it also demonstrates that she was responsible for sending packages of money to Diaz through Federal Express, for retrieving drugs that Diaz had shipped to the Lohrs, and for arranging for packages of drugs to be delivered to Robert Lohr through the gas station. The jury could reasonably infer that Vanessa Lohr was a part of the conspiracy from this evidence that she acted to advance its purposes.

In light of the foregoing, we conclude that the jury's verdicts with respect to the drug charges were amply supported by the evidence.

## 2. Sentencing Considerations

Sherman, Diaz, and Robert Lohr contend that, because the district court relied on drug quantities it determined using a preponderance of the evidence standard, they were sentenced in violation of the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000). Diaz also challenges the district court's determination that his sentence was subject to a role enhancement as an organizer or leader of a conspiracy involving more than five people.

## a. Apprendi Claims

Under Apprendi, "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490; see United States v. Chavez, 230 F.3d 1089, 1091 (8th Cir. 2000). The use of a judicially determined drug quantity as a basis for sentencing, however, is permissible so long as the defendant's sentence does not exceed the

statutory maximum sentence available for an indeterminate quantity of the drug, the offense simpliciter. United States v. Aguayo-Delgado, 220 F.3d 926, 933-34 (8th Cir.), cert. denied, 121 S. Ct. 600 (2000). None of the defendants raised an Apprendi argument before the district court, and therefore we review their claims for plain error. United States v. Brown, 203 F.3d 557, 568 (8th Cir. 2000) (per curiam). When a defendant is convicted of multiple counts, however, a sentence assessed in violation of Apprendi does not necessarily constitute plain error because "[t]he [Federal Sentencing] Guidelines require a district court to run sentences from multiple counts consecutively, rather than concurrently, if the Guideline sentence exceeds the statutory maximum sentence for each count." United States v. Sturgis, 238 F.3d 956, 960 (8th Cir. 2001) *petition for cert. filed*, ___ U.S.L.W. ___ (U.S. June 19, 2001) (No. 00-2584); see United States v. Bradford, 246 F.3d 1107, 1114 (8th Cir. 2001) (explaining proper use of concurrent and consecutive sentencing according to U.S.S.G. § 5G1.2(c) and (d)).

Sherman was sentenced to a term of imprisonment of 108 months. Because the statutory maximum for an indeterminate quantity of cocaine is 240 months, 21 U.S.C. § 841, his sentence does not violate Apprendi. See Chavez, 230 F.3d at 1091. Diaz was sentenced to 360 months for conspiracy, 240 months for distribution of cocaine, and 240 months for money laundering. Although Diaz's 360-month sentence does exceed the 240-month statutory maximum, the sentence does not amount to plain error because under U.S.S.G. § 5G1.2(d), the district court would have been required to run a portion of the drug sentences and the money laundering sentence consecutively to reach the guideline sentence of 360 months. See Sturgis, 238 F.3d at 960.

Robert Lohr was sentenced to two concurrent 262-month terms of imprisonment on the conspiracy and money laundering charges. The conspiracy sentence exceeds the statutory maximum of 240 months. The money laundering sentence also exceeds the 240-month statutory maximum sentence for that offense. There is no plain error, however, because the district court would be required to run 22 months of the money

laundering sentence consecutively with the conspiracy sentence, resulting in the 262-month sentence that Robert Lohr received.  See id.

We have reviewed the defendants' arguments that the district court's determinations of drug quantities were erroneous, and conclude that the determinations are supported by the record.  Likewise, we conclude that the government introduced evidence sufficient to support the individual counts of the indictment against Sherman and Diaz. We therefore find no reversible error in the court's sentencing determinations.

### b. Leader/Organizer Role Enhancement

Diaz challenges the court's determination that he was subject to a sentencing enhancement for his role as a leader or organizer of the conspiracy under U.S.S.G. § 3B1.1(a).  "Typically, this enhancement applies to a defendant who employs or otherwise arranges for intermediaries to sell his drugs."  Miller, 91 F.3d at 1163.  Although the defendant need not directly control his intermediaries in order to be a leader or organizer of the conspiracy, he must do more than sell for resale.  See id. at 1164.  The government's evidence established that Diaz had ultimate control over the supply of drugs and the way in which they were distributed.  For instance, following Linda Bay's arrest, Diaz determined that he would not deal directly with her and instead sold her drugs through Robert Lohr for a time before reestablishing their direct relationship.  In addition, Diaz directed the actions of individuals in California and Minnesota, controlling their drug supply and directing the manner of exchange of drugs and money.  Accordingly, the district court's conclusion that Diaz was an organizer or leader was not clearly erroneous.  See Rice, 49 F.3d 378, 385 (8th Cir. 1995).

## B. Aiding and Abetting Money Laundering Charge

All four defendants also challenge their convictions for aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A) and 2. They contend that the indictment violated our holding in United States v. Prescott, 42 F.3d 1165, 1166-67 (8th Cir. 1994), because it duplicitously charged them with multiple acts of money laundering in a single count. In addition, they challenge the sufficiency of the government's evidence to prove 1) that the money in question was actually drug proceeds, 2) that the purpose of its transfer was laundering rather than a simple exchange of cash for drugs, and 3) that the individual defendants were involved in a scheme to launder money.[3]

### 1. Sufficiency of the Indictment

Sherman argues that the money laundering charge should have been dismissed as duplicitous because it charged approximately one hundred fifty separate acts as one count of the indictment. He argues that Prescott stands for the proposition that each instance of money laundering must be alleged in a separate count of the indictment. Prescott, however, also holds that failure to object to a defect in the indictment before trial is a waiver of the objection. 42 F.3d at 1167. In this case, the objection was waived before the trial and then waived, and therefore may not be raised on appeal. Id.

---

[3]Sherman and Lohr also contend that, under Apprendi, the amount of money laundered ought to have been determined by the jury because the district court's finding increased their sentences under the sentencing guidelines. Because the amount of money laundered does not increase the statutory maximum for the underlying offense, this argument fails. See Aguayo-Delgado, 220 F.3d at 933.

## 2. Sufficiency of the Evidence

Robert and Vanessa Lohr contend that the government's evidence was insufficient to support their convictions on the money laundering count. They contend that there was insufficient evidence to demonstrate that the money they transferred to Diaz was the proceeds of drug trafficking. Vanessa Lohr also argues that the evidence was insufficient to show that she knew that the money she wired to Diaz and others via Western Union was the proceeds of illegal drug activity or that the money was intended to promote further drug trafficking.

The defendants were charged under 18 U.S.C. §§ 1956(a)(1)(A) and 2. To prove its case under § 1956(a)(1)(A), the government has the burden of proving beyond a reasonable doubt that the defendants knowingly conducted financial transactions which involved the proceeds of drug distribution and that they did so either with the intent to promote their drug business or with knowledge that the transaction was designed to disguise the nature or source of those proceeds. United States v. Blackman, 904 F.2d 1250, 1256 (8th Cir. 1990). Under § 2, anyone who aids and abets money laundering is criminally liable as a principal, and the government's burden to show aiding and abetting requires that the defendants "associated [themselves] with the venture, participated in it as in something they wished to bring about, and sought by [their] actions to make it succeed." United States v. Alvarez, 987 F.2d 77, 83 (1st Cir. 1993). The government must prove that the defendants took affirmative actions that facilitated the violation of § 1956(a)(1)(A) to support an aiding and abetting conviction. See id. The government may prove its case by circumstantial evidence. Blackman, 904 F.3d at 1257.

The Lohrs contend that their expert financial witness, who testified that all of the cash attributable to the Lohrs could have come from their legitimate sources of income, created a reasonable doubt as to whether the money transferred came from those sources. Taken in the light most favorable to the verdict, however, the evidence reveals

-12-

that the expert's testimony was in large part discredited by the government as based on self-serving and inaccurate information supplied by the Lohrs.  The government's evidence demonstrated that more than $278,000 of cash passed through the Lohrs' hands in the course of the conspiracy and that the Lohrs attempted to obscure and conceal the amount of cash they had by gambling, purchasing expensive items with cash, and using friends to purchase cashier's checks, money orders, and certified checks.  In addition, the government presented overwhelming evidence of numerous large drug transactions between Diaz and Robert Lohr during the conspiracy.  On these facts, the jury could reasonably have concluded that the Lohrs were converting cash proceeds from drug transactions in furtherance of the drug conspiracy.

Vanessa Lohr also contends that, even if the money she transferred by wire was drug proceeds, the government failed to prove that she was aware of its source.  The government's evidence demonstrated not only that Vanessa Lohr was aware of the drug trafficking operation, but that she profited from it both financially and through access to cocaine.  In addition, Vanessa Lohr was an active participant in the Lohr's legitimate businesses, and the jury could permissibly draw from her participation the inference that she was aware that the cash transfers were not a part of those businesses.  We therefore conclude that the government presented sufficient evidence to sustain the defendants' convictions on that count of the indictment.

## C. Forfeiture of the Lohr Home

The Lohrs contest the forfeiture of their home pursuant to 21 U.S.C. § 853(a)(2). Vanessa Lohr argues that, even if the residence was subject to forfeiture because it was used in the course of the conspiracy to distribute drugs, the inclusion of the surrounding property was improper because that property was not so used.  Our case law, however, makes clear that forfeiture of an entire parcel of real property is appropriate where part of the property was used to commit or facilitate a drug offense.  United States v. Bieri, 68 F.3d 232, 234 (8th Cir. 1995).

-13-

Vanessa Lohr also argues that the forfeiture of the property constituted an excessive fine in violation of the Eighth Amendment. A punitive forfeiture violates the Eighth Amendment only if "the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense." United States v. Bajakajian, 524 U.S. 321, 337 (1998). "[I]f the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive." United States v. 917 N.E. 29th Drive, 175 F.3d 1304, 1310 (11th Cir. 1999) *cert. denied sub nom.*, Howerin v. United States, 528 U.S. 1083 (2000). Each of the Lohrs was subject to a fine of up to $4,000,000. U.S.S.G. § 5E1.2(d)(7). Assuming that the Lohrs' $750,000 valuation of the property is accurate, we have no difficulty concluding that the fine is not excessive.

Robert Lohr also argues that the district court erred in allowing the forfeiture proceeding to take place despite his absence. Because of an administrative error, Robert Lohr was not transported to the courthouse for the forfeiture hearing. The hearing proceeded after Robert Lohr's attorney waived his presence on his behalf. Robert Lohr now contends that a defendant's presence cannot be waived by his attorney and that the forfeiture proceeding held in his absence thus violated his right to be present conferred by Federal Rule of Criminal Procedure 43. We have held, however, that a violation of Rule 43 is subject to harmless error analysis. United States v. Wallingford, 82 F.3d 278, 280 (8th Cir. 1996) (quoting Rogers v. United States, 422 U.S. 35, 40 (1975)). We conclude that any error by the district court in proceeding in Robert Lohr's absence was harmless. The jury returned two separate verdicts for forfeiture of the property. If we were to reverse, Robert Lohr could not retain his property by asserting an innocent owner defense. See United States v. N. 48 Feet of Lots 19 & 20 in Block 8 of M.J. Hammett's Addition to the City of Pine Bluff, Ark., 138 F.3d 1268, 1269 (8th Cir. 1998) (per curiam). His conviction on the conspiracy charge precludes any finding that he was without knowledge of the activities occurring on his property. Cf. United States v. 116 Emerson St., 942 F.2d 74, 80 (1st Cir. 1991) (relating successful assertion of innocent owner defense). The independent

determination that the property was subject to forfeiture by Vanessa Lohr thus renders moot the question of whether the forfeiture proceeding violated Rule 43.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.