## UNITED STATES of America, Plaintiff–Appellee,

v.

## Francis WEEKLY, also known as Frank, also known as Beverly; Ken Braddock; and Donna Romero, Defendants–Appellants.

### Nos. 96–1513, 96–1516 and 96–1532.

United States Court of Appeals, Eighth Circuit.

July 23, 1997.

Before BOWMAN, BRIGHT and JOHN R. GIBSON, Circuit Judges.

With permission of the panel, Judge Bright's dissent is modified to read as follows:

BRIGHT, Circuit Judge, dissenting.

I dissent.

This case provides a disturbing glimpse into the underbelly of prosecuting non-violent, first time drug offenders under mandatory minimum sentences. The district court sentenced Donna Romero, a first time offender and the mother of three young children, to a five-year mandatory minimum term of incarceration. Her request for a reduced sentence under the safety valve provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 was denied. In my view, this case should be remanded for resentencing because the sentencing judge relied on irrele-

vant evidence of a lie detector test to deny Romero application of the safety valve.

Romero and Grajeda transported drugs from Phoenix to St. Louis. Romero told the authorities that she did not organize or plan this trip, but merely accompanied Grajeda at his request. Romero acknowledged that she knew they were doing something illegal.

Romero sought relief from a five-year mandatory minimum sentence for this first offense by requesting application of the safety valve provision. Initially, Romero appeared to meet the requirements of the safety valve provision and the presentence report recommended its application in her case. The safety valve provides that a defendant must not have more than one criminal history point, must not use violence during the commission of the offense, the offense must not result in serious physical injury, the defendant must not be an organizer of the offense, and the defendant must truthfully provide all relevant information to the government regarding the offense. 18 U.S.C. § 3553(f). Application of the safety valve provision permits a district judge to sentence a defendant below the statutory mandatory minimum, but within the Sentencing Guideline Range. In this case, Romero could be sentenced between forty-six and fifty-seven months in prison.

Grajeda, the apparent husband of Ms. Romero and the father of two of her young children, had a different view of the circumstances. He asserted that Romero was responsible for transporting the drugs and that he merely joined her for the ride. In an apparent attempt to resolve the conflicting stories of Romero and Grajeda, the prosecutor arranged for Grajeda to take a lie detector test. Romero, on advice from counsel, declined to submit to a test. After Grajeda "passed" the lie detector test, the prosecutor opposed application of the safety valve provision for Romero and objected to the presentence report. Eventually the probation office prepared an "Addendum to the Presentence Report" recommending, based on the government's objection, that the

court not apply the safety valve provision to Romero.

The district court relied exclusively upon Grajeda's polygraph in denying Romero the safety valve.[1] The reliability of polygraph evidence has long been considered suspect, *Brown v. Darcy*, 783 F.2d 1389, 1394–97 (9th Cir.1986), and its admission into evidence is rarely granted. *See, e.g., United States v. Williams*, 95 F.3d 723, 728–730 (8th Cir.1996) (affirming denial of admission of polygraph into evidence). In the rare instance where it is utilized, courts require careful foundation such as a qualified polygraph expert and appropriate questioning. *See, e.g., United States v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995) (polygraph results inadmissible because "the questions posed to Kwong were inherently ambiguous no matter how they were answered"), *cert. denied*, — U.S. —, 116 S.Ct. 1343, 134 L.Ed.2d 491 (1996). The prosecution presented no such foundation here.

Let us review the relevance of Grajeda's lie detector test which was the focus of a hearing prior to sentencing. The polygraph examiner never testified. The government offered no evidence regarding the qualifications, if any, of the examiner. No report was presented to the district court. It is unknown if the examiner even made a report. Sent. Tr. at 27. We do not know the questions the examiner asked Grajeda, sent. tr. at 27–28, or Grajeda's answers. Indeed, the only testimony relating to the polygraph examination came from an individual, Agent Don Mendrala, who allegedly spoke with the examiner by telephone. The entire testimony on direct examination relating to the polygraph test is as follows:

Q. Who administered the polygraph examination?

A. Special Agent Ben Scott, Benjamin Scott.

Q. And his duties, he is employed by whom?

A. Employed by DEA as a polygraph examiner. At the time he was assigned to our New Orleans office.

---

1. Although the district court initially stated that it denied the safety valve "on several bases", sent. tr. at 32, the court only mentioned the polygraph examination.

[At this point, defense counsel objected to the line of questioning, but was apparently overruled. The questioning continued]

A. Currently assigned to our Washington D.C. office.

Q. And he traveled to St. Louis and administered a polygraph examination of Mr. Grajeda regarding his role in the offense, is that correct?

A. That's correct.

Q. And based upon your conversations with Ben Scoff, the examiner, did he render an opinion as to whether or not Mr. Grajeda passed or was telling the truth during that examination?

A. He indicated to me that he was truthful.

Q. And that no deception was indicated?

A. None at all.

Q. That's all, Judge.

Sent. Tr. at 25.

At sentencing, of course, the usual federal rules of evidence do not apply. But the evidence presented in this case lacked any trustworthiness or reliability whatsoever. In a word, the "evidence" of Grajeda's lie detector test was worthless. As such, it was entitled to no consideration by the district judge.

Moreover, Grajeda's obvious intent to sacrifice his wife and children resulted in part from the actions of the prosecutor. The United States Attorneys in drug cases often turn family member against family member with the result invariably being the destruction of the family and harm to the children. A recent article in *The Atlantic Monthly* provided an example of such a situation:

Federal prosecutors in Montana threatened her [Israel] with a long prison sentence. Although Israel possessed only eight ounces of marijuana at the time of her arrest, under the broad federal conspiracy laws she could be held liable for many of her husband's crimes. Israel was thirty-one years old, the mother of four young children. She had never been charged with any crime. Judge Jack Shanstrom warned her in court that without a promise of cooperation "you are not going to see your children for ten plus years." Nevertheless, Israel refused to testify against her husband. She was sentenced to eleven years in federal prison without parole. Her husband was sentenced to twenty-nine years without parole. Her children were scattered among various relatives.

Eric Schlosser, "More Reefer Madness", *The Atlantic Monthly*, Apr. 1997, at 96.

When Romero refused to take a lie detector test, the prosecutor did not simply retract his recommendation for the safety valve provision. Instead, he pursued a harsher sentence for obstruction of justice, as if a five-year sentence for this first-time offender was somehow insufficient punishment. Of course, it is the children who suffer for turning "family values" on its head in this fashion. The district court properly denied the government's request for an obstruction of justice adjustment. Sent. Tr. at 33.

The sad outcome of this case results from a sentencing structure which improperly confers immense discretionary power upon the prosecutor. He or she exercises substantive control over the sentencing process by determining what charges to pursue and whether to disagree with the recommendation contained in the presentence report. As this case demonstrates, the prosecutor, not bound by the rules of evidence, is free to introduce worthless evidence to "prove" a point regardless of its relevance. Unfortunately, "prosecutors sometimes forget that the prosecutor's special duty is not to convict, but to secure justice." *United States v. Guerra*, 113 F.3d 809, 818 (8th Cir.1997) (citations omitted).

The trial judge, on the other hand, is confined by the sentencing guidelines, the criminal code, the presentence report and the charges filed by the prosecutor. In short, the sentencing judge has little flexibility to do what he or she thinks is right. Furthermore, if the judge departs downward, prosecutors will often take an appeal. In my experience, the federal courts of appeal all too often side with prosecutors and not the district judges in these situations.

In my view, sentencing in many federal drug cases is unworthy of American justice, and it pains me that our citizens are often sentenced to lengthy prison terms under circumstances similar to those presented here. What is most disturbing, perhaps, is that this

case is not unusual in any significant respect from the seemingly endless drug cases we review. It is precisely the ordinariness of the manner in which we lock away Donna Romero for five years that appalls me. In the end, it is simply another example of excessive mandatory sentences, the use of improper evidence and the destruction of families that results from this country's treatment of its non-violent drug offenders.

A recent study by the Drug Policy Center of the Rand Corporation, representing the first detailed examination of the cost effectiveness of mandatory minimum sentences, concluded that "Mandatory minimum sentences are not justifiable on the basis of cost-effectiveness at reducing cocaine consumption or drug-related crimes[.]" *Study Questions Costs of Shift to Harsher Cocaine Sentences,* N.Y. Times, May 13, 1997, at A13; *see also United States v. Hiveley,* 61 F.3d 1358, 1363–66 (8th Cir.1995) (Bright, J., concurring). This case causes me to reflect on the words of the great English legal philosopher Jeremy Bentham: "Every particle of real punishment that is produced, more than what is necessary, is just so much misery run to waste." Jeremy Bentham, *Principles of Penal* Law, 1 The Works of Jeremy Bentham 398 (John Bowring ed., 1962).

Therefore, I would reverse and remand for resentencing.