UNITED STATES of America, Appellee,

v.

Barron Jerome NELSON, Appellant.

No. 98–1826.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 22, 1998.

Decided Jan. 5, 1999.

Patrick C. Harris, Assistant United States Attorney, Little Rock, AR, argued (Paul J. Casey, on the brief), for Appellee.

J. Blake Hendrix, Little Rock, AR, argued, for Appellant.

Before BEAM, LAY and LOKEN, Circuit Judges.

BEAM, Circuit Judge.

Barron Jerome Nelson ("Nelson") was charged in a two-count indictment with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846, and possessing with intent to distribute approximately four ounces of cocaine base in violation of 21 U.S.C. § 841. Prior to trial, the district court [1] denied Nelson's motion to suppress evidence found pursuant to a search warrant, and also denied Nelson's motion to dismiss the conspiracy count of the indictment. Following a jury trial, Nelson was found guilty on both counts and was sentenced to a term of 120 months imprisonment on each count, to be served concurrently, to be followed by five years supervised release, and a $100 special assessment.

On appeal, Nelson raises three issues. He argues that (1) the trial judge committed error in refusing to dismiss the conspiracy count because there was not sufficient evidence for the grand jury to find probable cause to issue the indictment; (2) the trial judge committed error in refusing to grant the pretrial motion to suppress evidence seized in the search, as the search warrant

---

1. The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

lacked probable cause; and (3) there was insufficient evidence to sustain either conviction. We affirm.

## I. BACKGROUND

On March 8, 1996, an affidavit in support of a search warrant for the apartment of Monica Brown was submitted by the Little Rock Police Department to a Little Rock, Arkansas, municipal judge. Ms. Brown is a former girlfriend of Nelson's and they have a child together. The affidavit stated that two confidential informants had purchased cocaine from Nelson on multiple occasions. The affidavit stated that Nelson had fronted cocaine, i.e., supplied the cocaine on credit for later payment, to confidential informant # 1 (later identified as Travis Jackson) on ten occasions, in amounts ranging from one ounce to one kilogram, and that Jackson had paid Nelson in excess of $35,000 for the fronted cocaine. Confidential informant # 2 stated that Nelson had fronted him cocaine on at least five occasions in amounts ranging from one-quarter ounce to five ounces, and that he had paid Nelson over $13,000 for the cocaine.[2]

The affidavit explained that the confidential informants would later arrange to pay Nelson for the fronted cocaine by paging him. On numerous occasions when Nelson would call informant Jackson back, the Caller I.D. system on Jackson's phone indicated that Nelson was calling from "501–228–4739, M. Brown." On these occasions Nelson told Jackson that he was at home. Subscriber information was obtained for this phone number which indicated that it was listed to Monica Brown at 8500 Michael Court, Apartment # 131, Little Rock, Arkansas, which was Ms. Brown's current address and the address the police wished to search.

The affidavit further explained that in February 1996, officers set up a meeting between Nelson and informant Jackson in which Jackson was to pay Nelson with FBI buy money for the cocaine Nelson had previously fronted him. The officers had Jackson page Nelson, and the Caller I.D. system

showed that Nelson called back from phone number 501–228–4739 (Ms. Brown's number). At trial, officers testified that the prearranged meeting took place under surveillance on February 23 at Jackson's apartment. Although the police were unable to identify the man who participated with Jackson in this meeting, they did see a Honda Accord registered to Nelson parked outside the residence. After the meeting police followed the Honda Accord, lost it in traffic, then located it parked on the same block as Ms. Brown's apartment.

A Little Rock municipal judge signed a search warrant for Monica Brown's apartment on March 8, 1996, and it was executed that same day by Little Rock police officers. During the search, 3.9 ounces of cocaine base, among other things, was seized from Ms. Brown's apartment. At trial, Nelson stipulated that if the jury found he possessed the cocaine base, he would concede that he possessed the cocaine for the purpose of distribution.

## II. DISCUSSION

### A. The Grand Jury Proceedings

 Nelson argues there was insufficient evidence from which the grand jury could have found probable cause to believe that Nelson was guilty of conspiracy. This argument is. without merit. It has long been settled that an indictment is not open to challenge on the ground that there was inadequate or insufficient evidence before the grand jury. See *Costello v. United States,* 350 U.S. 359, 363–64, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Cady,* 567 F.2d 771, 776 (8th Cir.1977).

### B. The Motion to Suppress

 Nelson argued before trial, and on appeal, that the evidence seized at Monica Brown's apartment should have been suppressed as the affidavit underlying the search warrant did not support a finding of

---

2. *Confidential informant # 2 was later identified as Robert Murphy. Mr. Murphy was subpoenaed to appear as a witness at trial. Mr. Mur-* phy, however, failed to appear and did not testify at trial. He was subsequently arrested and found in contempt of court.

probable cause.[3] There should be little doubt in reading the affidavit that there was sufficient evidence of probable cause. The affidavit set forth numerous facts establishing Nelson's drug dealing activity and connecting Nelson to Ms. Brown's apartment. Accordingly, based upon the totality of the circumstances, we find overwhelming evidence of probable cause. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We also hold that even if the search warrant was not supported by probable cause, the evidence is still admissible under the good faith exception as set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[4] Therefore, the district court properly denied Nelson's motion to suppress.

## C. Sufficiency of the Evidence

Nelson contends the evidence is insufficient to support either the possession or the conspiracy conviction. When reviewing the sufficiency of the evidence to support a conviction, this court must "examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences." *United States v. Ivey,* 915 F.2d 380, 383 (8th Cir.1990). "We reverse only if we conclude that a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offense's essential elements." *Id.*

### 1. The Possession Conviction

During the search of Ms. Brown's apartment, the police found 3.9 ounces of cocaine base. Nelson argues there was insufficient evidence to find that he possessed the cocaine base. To convict Nelson on a violation of 21 U.S.C. § 841(a)(1), the government must prove that Nelson knowingly possessed the cocaine base with the intent to distribute. Nelson stipulated that if the jury found he possessed the cocaine base found at Ms. Brown's apartment, that he intended to distribute it. "Proof of constructive possession is sufficient to satisfy the element of knowing possession." *United States v. McCracken,* 110 F.3d 535, 541 (8th Cir.1997). Constructive possession "can be established if a person has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" *Id.* (quoting *United States v. Ojeda,* 23 F.3d 1473, 1475 (8th Cir.1994) (citation omitted)).

During the search of Ms. Brown's apartment, the police found a safe containing $2,410 in cash, which included $700 of the buy money the FBI had supplied to Jackson to pay for a previous cocaine advance from Nelson; mail addressed to Nelson on multiple dates; a set of digital scales; a receipt in Nelson's name for the purchase of a 9 mm pistol; a receipt in Nelson's name for the pager number used by Jackson to contact the defendant; and various documents and clothes identified at trial as belonging to Nelson. In addition, Ms. Brown testified that the safe, scales, cash, drugs, and gun were not hers. Finally, Nelson himself ad-

---

**3.** Nelson briefly mentions that the information contained in the affidavit was stale. This argument is without merit. *See United States v. Formaro,* 152 F.3d 768, 771 (8th Cir.1998) (noting that "in investigations of ongoing narcotic operations, 'intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale.'") (quoting *United States v. Ortiz,* 143 F.3d 728, 732–33 (2d Cir.1998) (citation omitted)).

**4.** Nelson urges that the *Leon* good faith exception is not applicable because the evidence at trial demonstrated that the affidavit contained two misstatements of fact. First, the affidavit stated that Jackson had supplied the police with reliable information on ten previous occasions, while at trial Jackson stated he had only worked for the police on two other occasions. Second, the affidavit stated that during the February 23rd con-

trolled buy with Jackson, FBI agents observed Nelson arrive and leave in a Honda Accord, followed Nelson to Ms. Brown's apartment, and watched him enter the apartment. At trial, the officers testified that they could not identify the man in the Honda Accord, that they lost it in traffic, and that they later found the car parked in the vicinity of Ms. Brown's apartment. However, assuming the challenged statements are false, Nelson has made no showing of deliberate falsehood or reckless disregard for the truth. *See Leon,* 468 U.S. at 923, 104 S.Ct. 3405; *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In addition, even if we were to remove the challenged statements from the affidavit, we hold that the redacted affidavit is sufficient to establish probable cause to issue the search warrant. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674.

mitted that he spent the night at Ms. Brown's apartment the night before the search warrant was executed. Under the circumstances, the evidence submitted was sufficient to support a reasonable inference by the jury that the cocaine base belonged to Nelson.[5]

### 2. The Conspiracy Conviction

■ To convict a defendant of conspiracy "the government must prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." *United States v. Cabrera*, 116 F.3d 1243, 1244 (8th Cir.1997) (citation omitted).

■ The defendant challenges the sufficiency of the evidence to sustain the conspiracy conviction arguing that the sales by Nelson to confidential informant Jackson proved only a buy-sell agreement and not a conspiracy. It is well established that a mere sales agreement without more does not establish a conspiracy. *United States v. Prieskorn*, 658 F.2d 631, 633 (8th Cir.1981); *Cabrera*, 116 F.3d at 1244–45

On appeal, the government advances two separate theories as to why Nelson is guilty of conspiracy. The government's principal theory at trial centered on a conspiracy between Nelson and his unknown source for drugs, the theory being that since he had to get his drugs from a supplier, he must have conspired with that supplier.

There are two problems with this theory. First, the indictment and the instructions to the jury limit the conspiracy to one entered into between some time in February 1996 and March 8, 1996. While the affidavits used to sustain the search warrant indicated that Nelson was involved in distribution of large quantities of drugs in the past, including amounts fronted to Jackson, no evidence pin-

pointed activities involving Nelson and "unknown sources" during the specified time period. Second, although our cases do sustain conspiracy convictions when all conspirators other than the defendant are unknown, we have uniformly required detailed evidence supporting an inference of conspiracy. *See Cross v. United States*, 392 F.2d 360, 362 (8th Cir.1968) (defendant detailed the agreement between himself and his supplier); *United States v. Smiley*, 997 F.2d 475, 479 (8th Cir.1993) (defendant traveled to Thailand and bragged about dealing with major drug producer). The facts of this case support no such inference.

■ The government also advances a conspiracy theory focusing on transactions between Nelson and Jackson. In its brief, the government states that "Jackson was both a cooperating witness and a co-conspirator at the same time." This is at least partially correct.

■ It is well settled that there can be no indictable conspiracy involving only the defendant and government agents and informers. *See United States v. Nichols*, 986 F.2d 1199, 1204 (8th Cir.1993); *United States v. Moss*, 591 F.2d 428, 434 n. 8 (8th Cir.1979). However, here there were two separate drug transactions involving Nelson and Jackson under circumstances indicating that Jackson was not a government agent. It is clear that Jackson performed services as a confidential informant for the FBI in 1994 and 1995. It is also clear that Jackson again became a confidential police informant on February 20, 1996. This came about as a result of a telephone call Jackson made to a police officer member of the joint drug task force operating in Little Rock. This call followed a drug transaction between Nelson and Jackson wherein Nelson fronted an ounce of cocaine to Jackson. The cocaine was turned over to the task force and Jackson made payment to Nelson for the fronted ounce with government money under controlled cir-

---

**5.** There is also testimony by a Sergeant Hudson of the Little Rock Police Department that while executing the search warrant he answered the ringing phone at the apartment, and a person who identified himself as Nelson admitted that the drugs were his and stated that he would turn himself in if the police would release his girl-friend, Ms. Brown. The court does not rely upon this testimony in finding that there is sufficient evidence to uphold the possession conviction, as the alleged phone call could have been made by anyone. However, even without the alleged phone call, there is more than sufficient evidence to find that Nelson possessed the cocaine base.

cumstances. However, there was clearly a conspiratorial agreement reached between Nelson and Jackson prior to the telephone call Jackson made to the police. Jackson testified as follows:

Q: At the time he [Nelson] gave you that ounce of cocaine base [turned over to the drug task force], did you have to pay him some money [at] that time?

A: No, I didn't.

Q: How were you going to pay him for it?

A: I was going to sell it and then pay him.

From this, it is clear that prior to Jackson's contact with the police on February 20, he accepted the fronted ounce from Nelson with an intent to sell the ounce and pay Nelson. This was an unlawful agreement sufficient to support a conspiracy charge even though Jackson later decided to turn the fronted cocaine over to the police.

There was also a second transaction. At the time Jackson carried out the controlled payment for the fronted ounce, he received, without the knowledge of the police, a second ounce from Nelson under the same fronting arrangement. Jackson testified that he called someone, presumably the task force, to see if they wanted the second ounce, and that they declined because the task force did not have any more buy money. However, he also testified that he lied to the police and that he did not specifically tell them about his obtaining the second ounce. In any event, he kept the second ounce, sold it and paid Nelson for the fronted drugs, withholding the facts of the affair from the police. We think the evidence concerning either or both of these transactions supports the conspiracy conviction.

## III. CONCLUSION

The judgment of conviction for illegal possession with intent to distribute is affirmed; the judgment of conviction as to the conspiracy count is also affirmed.