# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2645

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the District |
| Oscar Hernandez Rios, | * | of Nebraska. |
| | * | |
| Appellant. | * | |

_____

Submitted: January 13, 1999

Filed: March 8, 1999

_____

Before LOKEN, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After a jury trial, Oscar Hernandez Rios was convicted on three counts of possession of methamphetamine with the intent to distribute it and of a related conspiracy count. The district court[1] sentenced Mr. Rios to a term of 151 months of imprisonment. He appeals both his convictions and his sentence, and we affirm.

_____

[1]The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

As part of an ongoing investigation into the activities of Mr. Rios and Dale Selko, law enforcement officers from the local sheriff's department received information that Mr. Selko was distributing methamphetamine from a hotel room. They searched the room and found approximately one pound of methamphetamine, which Mr. Selko identified as having been supplied to him by Mr. Rios. The officers arrested Mr. Selko, and he agreed to assist them in planning and carrying out a reverse sting operation in which he would return the methamphetamine to Mr. Rios. Authorities conducted a successful sting operation at the hotel the next day, and they arrested Mr. Rios and subsequently charged him.

On appeal, Mr. Rios maintains that there was insufficient evidence to convict him of conspiracy because Mr. Selko was cooperating with local law enforcement at the time that the reverse sting operation was carried off. We disagree. It is of course a well-established rule that "there can be no indictable conspiracy involving only the defendant and government agents and informers." *United States v. Nelson*, __ F.3d __, 1999 WL 1842 at *4 (8th Cir. 1999). While Mr. Rios is therefore correct that no conspiracy could have existed between him and Mr. Selko during the sting operation itself, we believe that there is ample evidence in the record of his knowledge of and participation in a conspiracy to distribute methamphetamine prior to that date.

Mr. Selko testified that he purchased up to ten pounds of methamphetamine from Mr. Rios between October, 1996, and November, 1997, and that Mr. Rios supplied the pound of methamphetamine that was found in the hotel room. Gregory Beiriger, who had purchased methamphetamine from Mr. Selko, testified that Mr. Selko told him in May, 1997, that Mr. Rios was his supplier. In addition, video and audio recordings of the sting operation showed Mr. Selko counting out $3,500 and telling Mr. Rios to record this as a payment, then placing a bag containing methamphetamine on a table and complaining to Mr. Rios about its quality. The recordings showed Mr. Rios subsequently picking up the bag, looking inside, and

vouching for the quality of the drug. We believe that the witnesses' testimony and these recordings provide abundant evidence of Mr. Rios's knowledge of and participation in a conspiracy to distribute methamphetamine prior to the meeting in the hotel room. The verdict on the charge of conspiracy is thus more than amply supported by the record.

Mr. Rios also maintains that the trial court should have instructed the jury that he could not be convicted of conspiracy based solely on the events occurring during the sting operation. Mr. Rios requested no such instruction at trial, however, and we see no plain error here. *See United States v. Jorgensen*, 144 F.3d 550, 561 (8th Cir. 1998). It is clear from the record that the evidence relating to the sting operation was introduced as proof of Mr. Rios's prior knowledge of and participation in the conspiracy, rather than as evidence of an ongoing conspiracy between the two men during that operation itself. We do not believe that an instruction was necessary to explain this distinction to the jury.

## II.

The jury found Mr. Rios guilty of possession of methamphetamine with the intent to distribute it based on his receipt during the sting operation of the bag containing methamphetamine. Mr. Rios contends that there was insufficient evidence to support his conviction for this offense. We disagree. The video and audio recordings of Mr. Rios accepting the bag of methamphetamine and vouching for its quality, coupled with Mr. Selko's testimony that Mr. Rios had delivered the methamphetamine to him for distribution a few days earlier, are sufficient to support the jury's verdict on possession with intent to distribute.

## III.

Mr. Rios maintains that the trial court erred when it failed to apply the "safety valve" provision of the sentencing guidelines. *See* U.S.S.G. § 5C1.2 and 18 U.S.C. § 3553(f). Because Mr. Rios failed to request application of the safety valve

provision or to object to the sentence before the trial court, we review the court's sentencing decision for plain error.

In order to be eligible for a more lenient sentence under the safety valve provision, Mr. Rios had "the burden to show, through affirmative conduct, that he [had] given the government truthful information and evidence about the relevant crimes before sentencing," *United States v. Weekly*, 118 F.3d 576, 581 (8th Cir. 1997), *modified on other grounds*, 128 F.3d 1198 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 611 (1997); *see also* U.S.S.G. § 5C1.2. (The government concedes that he met the other conditions of eligibility set forth in § 5C1.2). While Mr. Rios did meet with law enforcement authorities prior to sentencing, the government contended that he failed to provide truthful information regarding his crimes, and Mr. Rios did not dispute the government's contention at the sentencing hearing. We conclude that because he failed to produce evidence of his eligibility, the trial court's decision to sentence him without regard to the safety valve provision could not have been plain error. Indeed, it would have been plain error to apply the safety valve provision on this record.

## IV.

For the foregoing reasons, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.