# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1387

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Sergio Ramirez, | * | |
| | * | |
| Defendant-Appellant. | * | |
| | * | |

_____

Submitted: October 22, 2003

Filed: November 24, 2003

_____

Before BYE, HANSEN, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Sergio Ramirez was charged in a two-count superseding indictment with conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841 (b)(1)(A) and with distributing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). A jury convicted Ramirez of both counts after a one-day trial. The district court[1] sentenced him to 240 months and 120 months

_____

[1] The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

of imprisonment on counts one and two, respectively, to be served concurrently. The conviction for distribution arose out of a controlled buy with a cooperating defendant, Karen Cash, and that conviction is not at issue in this appeal. Ramirez appeals only the sufficiency of the evidence to sustain his conspiracy conviction. We reject Ramirez's sufficiency-of-the-evidence arguments and affirm the district court's denial of his motion for judgment of acquittal.

## I. FACTUAL BACKGROUND

Ramirez was jointly charged with an alleged co-conspirator, Jeffrey Robert Behle. Specifically, the Grand Jury charged that "two or more persons, known and unknown to the Grand Jury, including defendants, SERGIO RAMIREZ, and JEFFREY ROBERT BEHLE, did conspire to . . . knowingly and intentionally distribute . . . methamphetamine." Superseding Indictment, Dist. Ct. Doc. No. 10. Ramirez and Behle were initially scheduled to be tried together, but Behle obtained a continuance, and Ramirez proceeded to trial alone. At trial, the government did not call Behle, nor did it present any evidence regarding Behle's participation in the charged conspiracy. Karen Cash was the government's main witness against Ramirez at trial, and she testified pursuant to a cooperating plea agreement.

Viewed in the light most favorable to the verdict, United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996), the evidence reveals the following facts. Cash's involvement in this case began when police executed a search warrant at her home and recovered one pound of methamphetamine and one pound of marijuana. She testified that she had purchased the methamphetamine from Ramirez approximately three days prior to the execution of the search warrant. In exchange for a substantial assistance motion, she agreed to make a controlled buy of methamphetamine from her source, Ramirez. Cash and Ramirez met at a fast food restaurant, where Cash paid Ramirez $9,000 for approximately one pound of methamphetamine. Ramirez gave Cash the methamphetamine, which the police seized shortly after the drug transaction.

The jury also heard the conversation, albeit from a surveillance tape of poor audible quality, that took place between Cash and Ramirez during the controlled purchase. Ramirez told Cash that the methamphetamine was made that day by other people, that he could supply more methamphetamine that same day if Cash's customer needed more, that he could sell Cash multiple pound quantities of methamphetamine, and that he supplied high quality, one-third pure methamphetamine. Ramirez also encouraged Cash to purchase a pound of pure methamphetamine because she could make substantially more money by diluting its purity herself before resale.

At trial, Cash testified that she and Ramirez knew each other from work and that, prior to the controlled buy, she had purchased one-pound quantities of methamphetamine from Ramirez on at least three occasions. She also testified that she had purchased marijuana from Ramirez. For each purchase, Cash paid Ramirez in full at the time of the transaction, which took place either at an agreed-upon neutral location or at Cash's home.

## II. DISCUSSION

On appeal, Ramirez challenges the sufficiency of the evidence as to the conspiracy charge against him. He argues that the government failed to establish the existence of a conspiracy, as well as an "interdependence" between himself and his alleged co-conspirators. He argues that the government did not meet its burden of proving a conspiracy because it failed to present any evidence regarding Ramirez's named co-conspirator, Behle. Second, with regard to his relationship with Cash, Ramirez contends that, at most, the evidence shows the existence of a buyer-seller relationship. To succeed in his appeal on this point, Ramirez acknowledges that we would have to depart from established Eighth Circuit precedent concerning the permissible inferences to be drawn from multiple sales of large quantities of drugs. And finally, Ramirez claims that there could be no conspiracy between himself and

Cash because, at the time of the controlled buy, Cash was acting as a government agent.

## A.  Standard of Review

The standard of review on a sufficiency-of-the-evidence challenge is very strict.  United States v. Espino, 317 F.3d 788, 791 (8th Cir. 2003).  "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict."  Id. at 792.  "We will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt."  Id.

## B.  Conspiring to Distribute Methamphetamine

To find Ramirez guilty of the conspiracy offense charged against him, the government was required to prove each of the following essential elements beyond a reasonable doubt: (1) the existence of a conspiracy with an illegal purpose, (2) that the defendant was aware of that conspiracy, and (3) that he knowingly became a part of it.  E.g., United States v. Beckman, 222 F.3d 512, 522 (8th Cir. 2000); United States v. Mosby, 177 F.3d 1067, 1069 (8th Cir. 1999); United States v. Bass, 121 F.3d 1218, 1220 (8th Cir. 1997).  There must be evidence that the defendant entered into an agreement with at least one other person.  United States v. Robinson, 217 F.3d 560, 564 (8th Cir. 2000).  "The conspiracy may be proved through circumstantial evidence and may be implied by the surrounding circumstances or by inference from the actions of the parties."  United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003).

While Ramirez places much emphasis on the lack of evidence regarding Behle's participation in the conspiracy, the government correctly points out that the indictment alleges that Ramirez conspired with Behle, as well as with "persons,

known and unknown, to the Grand Jury." Superseding Indictment, Dist. Ct. Doc. No. 10. That the government did not produce evidence tending to show any agreement between Ramirez and Behle is not fatal because the government produced abundant evidence of a conspiracy between Ramirez and Cash and between Ramirez and his suppliers, even though the jury never learned the identity of those suppliers.

Ramirez points to several factors that courts have used to distinguish between the existence of a conspiracy and a mere buyer-seller relationship, but he acknowledges that no one factor is determinative. Our circuit has held that, "[t]o prove the existence of a conspiracy, the government may provide information regarding how long [the alleged co-conspirators] were associated with each other, their established methods of payment, whether or not their transactions were standardized, and their demonstrated level of mutual trust." United States v. Washington, 318 F.3d 845, 852 (8th Cir.), cert. denied, 124 S. Ct. 209 (2003). We have disavowed any adherence to a strict, formalistic approach to the proof necessary to show a conspiracy and have stated,

> Having put forth testimony that a conspiracy existed, the government need only provide evidence "establishing beyond a reasonable doubt a connection of a defendant with a conspiracy." United States v. DeLuna, 763 F.2d 897, 924 (8th Cir. 1985). Even if this connection is "slight," it is "sufficient to convict him of knowing participation in the conspiracy." Id.

Washington, 318 F.3d at 852-53.

Here, the government produced more than sufficient evidence from which a rational jury could find beyond a reasonable doubt that Ramirez and Cash, as well as Ramirez and his suppliers, were members of a drug conspiracy. First, the sheer quantity of drugs Cash purchased on at least three occasions prior to the controlled buy is strong evidence of a conspiracy. Cash testified that she had purchased one-

pound quantities of methamphetamine from Ramirez on multiple occasions. In this circuit, "evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." United States v. Eneff, 79 F.3d 104, 105 (8th Cir. 1996); accord United States v. Delpit, 94 F.3d 1134, 1152 (8th Cir. 1996) ("In this Circuit, a series of drug deals for resale can prove a conspiracy to distribute."). It is widely recognized that this large quantity (one pound) exceeds the amount of methamphetamine commonly purchased for "personal use." See, e.g., United States v. Hall, 171 F.3d 1133, 1148-49 (8th Cir. 1999) (considering testimony that three and a half grams of methamphetamine was a reasonable amount for personal use and determining that the defendants' possession of a half-pound of the drug was evidence of their intent to distribute); United States v. Miller, 91 F.3d 1160, 1162 (8th Cir. 1996) (sales of one-pound quantities of methamphetamine created inference of conspiracy).

The government at Ramirez's trial did not present expert testimony regarding personal use versus resale quantities of methamphetamine. However, the conversation between Cash and Ramirez recorded during the controlled buy provides a sufficient nexus to tie Ramirez to a drug conspiracy, which, in conjunction with a common sense approach to the significance of repeatedly purchasing a pound of methamphetamine, shows that Ramirez was involved in a conspiracy to distribute methamphetamine.

Second, Ramirez's own statements made during the controlled buy indicate that others were involved in the conspiracy, that he knew Cash intended to further distribute the purchased methamphetamine, and that, as Cash's supplier, he stood to gain from her success as a methamphetamine dealer. Namely, the jury heard evidence of Ramirez's recorded reference to other co-conspirators who manufactured the methamphetamine that he sold, Ramirez's statement that he could supply Cash with more methamphetamine if she needed more for her customer, and Ramirez's attempt to persuade Cash to consider purchasing pure methamphetamine from him so that she

could make a greater profit from her sales by diluting the pure methamphetamine herself. This evidence, viewed in the light most favorable to the government, sufficiently proves each of the essential elements of the conspiracy charge.

Ramirez strongly urges this panel to follow the law of those circuits that require proof not only that the defendant gave drugs to others knowing that they would be distributed, but also that the defendant had an agreement with those other people to so further distribute the drugs. See, e.g., United States v. Lennick, 18 F.3d 814, 819 (9th Cir. 1994) ("To show a conspiracy, the government must show not only that [the defendant] gave drugs to other people knowing that they would further distribute them, but also that he had an agreement with these individuals to so further distribute the drugs."); United States v. Lechuga, 994 F.2d 346, 347 (7th Cir. 1993) (en banc) ("'[L]arge quantities of controlled substances, without more, cannot sustain a conspiracy conviction.'"); United States v. Howard, 966 F.2d 1362, 1364 (10th Cir. 1992) ("The huge quantity of crack cocaine involved in this case permits an inference of conspiracy, but by itself this is not enough to convict defendant."). In United States v. Miller, we acknowledged the contrary view of other circuits but maintained that, in this circuit, "'evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of conspiracy to distribute.'" Miller, 91 F.3d at 1162 (quoting Eneff, 79 F.3d at 105). As the Miller court recognized, "as a panel, we are not free to depart from our precedents." Miller, 91 F.3d at 1162 n. 1. Even so, this case does not require us to revisit our precedents because, as described above, Ramirez's case does not rest solely on the inferences drawn from his sale of resale quantities of methamphetamine. His own recorded statements tie him to a conspiracy to distribute methamphetamine.

Finally, Ramirez argues that, because Cash could not be considered a co-conspirator when she was acting as a government agent, this court cannot consider Ramirez's statements made during the controlled buy. We agree with Ramirez's statement that "[i]t is . . . a well-established rule that 'there can be no indictable

conspiracy involving only the defendant and government agents and informers.'" United States v. Rios, 171 F.3d 565, 566 (8th Cir. 1999) (quoting United States v. Nelson, 165 F.3d 1180, 1184 (8th Cir. 1999)).  Nevertheless, we disagree with his assertion that we cannot consider his incriminating statements made during a controlled buy as evidence of his participation in a drug conspiracy (1) because they reveal his involvement in a conspiracy that extends beyond Cash and beyond the controlled buy and (2) because they shed light on his knowledge of what Cash did with past one-pound purchases of methamphetamine from Ramirez.  That is to say that the statements provide the jury a reasonable basis from which to infer that Ramirez knew that Cash distributed the past one-pound quantities of methamphetamine that she purchased from him.  See Rios, 171 F.3d at 566 ("While Mr. Rios is therefore correct that no conspiracy could have existed between him and Mr. Selko during the sting operation itself, we believe that there is ample evidence in the record of his knowledge of and participation in a conspiracy to distribute methamphetamine prior to that date.").

## III.  CONCLUSION

Accordingly, because the evidence in the light most favorable to the verdict shows Ramirez's voluntary participation in a conspiracy to distribute methamphetamine, we affirm the judgment of conviction.

_____