# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1576

_____

United States of America,      *
      *
      Appellee,      *
      *
v.      *
      *
Todd Alan Scofield,      *
      *
      Appellant.      *


_____

No. 05-1577

_____

|  | |
|---|---|
| | Appeals from the United States District Court for the District of South Dakota. |

United States of America,      *
      *
      Appellee,      *
      *
v.      *
      *
Robert George Worshek,      *
      *
      Appellant.      *

_____

Submitted: October 13, 2005
Filed: January 4, 2006

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

A jury convicted Todd Alan Scofield and Robert George Worshek of crimes stemming from the distribution of methamphetamine.[1] Following post-verdict motions for acquittal by both defendants, the district court granted Worshek's motion for acquittal with regard to his conspiracy conviction and the first count of distribution, finding that there was insufficient evidence to support those convictions. The court denied Scofield's motion. Both defendants now appeal their convictions and their sentences. We affirm Scofield's conviction and sentence in all respects. However, we reverse Worshek's remaining distribution count for insufficiency of evidence.

## I. *Background*

Todd Alan Scofield dealt methamphetamine from a small house with a detached garage in Sioux Falls, South Dakota. Wayne Johnson was a small-time drug dealer in the area. On at least three occasions before Johnson was arrested, Scofield provided or "fronted" Johnson with approximately one-ounce quantities of methamphetamine. Johnson would then resell the drugs, repay his debt to Scofield, and receive another fronted ounce.

Following his arrest on drug charges, Johnson became a confidential informant and told investigators that he had purchased methamphetamine from Scofield on several occasions. Johnson told police that he still owed Scofield money for the last transaction. Johnson also stated that Worshek was present during each transaction but

---

[1]Scofield was convicted of one count of conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1); two counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Worshek was convicted of one count of conspiracy to possess methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1); and two counts of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2.

made no statements regarding the level of Worshek's involvement. Cooperating with police, Johnson went to Scofield's house to pay for the previous purchase and to make a controlled drug buy for the police. Following payment, Scofield fronted Johnson an additional 28 grams of methamphetamine. Johnson stated that Scofield went into a bedroom to retrieve the methamphetamine and then went into the bathroom to weigh it. Johnson saw Worshek in Scofield's residence at the time of the transaction but did not see Worshek directly involved in the transaction.

When Johnson arrived at Scofield's house for a second controlled buy, Worshek answered the door and let in Johnson, explaining that Scofield was bathing his dog. While waiting to conduct the transaction with Scofield, Johnson sat in the living room and watched television with Worshek. Scofield then came out and asked Johnson what he wanted. Johnson followed Scofield into the bedroom and paid Scofield $2,000 for the two buys. Johnson told Scofield that he wanted two ounces of methamphetamine, explaining that "I have a guy who wants another one."

According to Johnson, he returned to the living room and resumed watching television. Johnson noticed Scofield enter the kitchen and begin to get dressed to go outside, presumably to the garage. Johnson surmised that Worshek entered the kitchen upon seeing Scofield dressing, commented that Scofield was getting sick and had wet hair, and offered to help. Johnson did not hear what Scofield said in response to Worshek.[2] Because Johnson was in the living room facing east, he could not see into the kitchen, which was behind him.[3] However, after the brief exchange between Scofield and Worshek, Johnson believed someone went outside but did not know if

[2]In fact, Johnson testified that he had trouble hearing anything that took place in the kitchen, stating that "I was actually trying to listen, but I couldn't hear."

[3]Johnson's inability to see what took place in the kitchen was supported by his own trial testimony, as well as the testimony of Officer Duprey. In a police report about the second controlled buy, Duprey wrote that the informant never actually saw Worshek bring in any box from outside.

it was Worshek or Scofield. Although unable to see the back door located in the kitchen, Johnson heard the bells on the door ring, indicating that someone had left. A few minutes later, the bells rang again presumably as *someone* came back into the house. Worshek then returned to the living room. Scofield then came into the living room and tossed a large box containing several plastic bags of methamphetamine to Johnson. Johnson handed the box back to Scofield, who measured out two ounces of methamphetamine and gave it to Johnson. The police intervened and received over 58.6 grams of methamphetamine from Johnson.

On direct-examination, Johnson testified that Worshek had gone to the garage and retrieved the box of methamphetamine that Scofield brought into the living room. However, on cross-examination, Johnson admitted that he could not hear the entire conversation between Scofield and Worshek in the kitchen, that he could not see who went out or came in the kitchen door, and that he could not see whether the person who entered through the kitchen door was even carrying a box. Johnson candidly admitted he assumed Worshek went to the garage and returned with the box.

The next day, law enforcement executed a search warrant on Scofield's house. Both defendants were present and were arrested. During the search, law enforcement officers seized scales, methamphetamine paraphernalia, cash, and 447.2 grams of methamphetamine. The officers also discovered a Glock pistol. A subsequent search of a storage unit rented by Worshek uncovered a container of dimethylsulfone powder or MSM. Chemical analysis of the methamphetamine purchased from Scofield and seized during the search of his house showed that it had been diluted by being mixed with MSM.

Thomas Skinner, the government's fingerprint expert, analyzed the box containing the methamphetamine, as well as the bags inside the box and one extra bag. Skinner testified that he found only two latent fingerprints—one on the box and the other on a bag—and that both prints belonged to Scofield. Upon further questioning,

Skinner testified that he was never asked to check for fingerprints on the safe, the paraphernalia, or either of the scales.

The government filed a four-count indictment against Scofield and a three-count indictment against Worshek. The jury found both defendants guilty on all counts. However, the district court granted, in part, Worshek's motion pursuant to Federal Rules of Criminal Procedure 29(c), entering an order that affirmed his guilt with respect to Count IV (distribution of methamphetamine during the second controlled buy) but acquitted him with respect to Count I (conspiracy to possess methamphetamine) and Count III (distribution of methamphetamine during the first controlled buy). The district court denied Scofield's Rule 29(c) motion, finding sufficient evidence on the conspiracy count.

The district court sentenced Scofield to 240 months' imprisonment on Counts I, III, and IV to run concurrently with his sentence of 120 months' imprisonment for Count II. Worshek was sentenced to 97 months' imprisonment on Count IV.

On appeal, Scofield contends that the district court committed two reversible errors: (1) the denial of his Rule 29(c) motion; and (2) evidentiary error by allowing the admission of certain evidence against him. For the reasons stated below, we affirm the denial of Scofield's Rule 29(c) motion because there was sufficient evidence of his guilt. Similarly, we affirm with respect to his evidentiary arguments because we find no plain error.

Worshek raises several points on appeal, including the district court's denial of his Rule 29(c) motion with respect to Count IV. Because we agree that Worshek's Rule 29(c) motion should have been granted in full, Worshek's other arguments on appeal, all of which relate to sentencing, are rendered moot and need not be addressed.

## II. *Discussion*
### A. *Sufficiency of the Evidence*

Scofield and Worshek challenge the district court's denial of their respective motions for post-verdict acquittal pursuant to Fed. R. Crim. P. 29(c). Both defendants argue that there was insufficient evidence to support their convictions. Scofield contends that there was insufficient evidence to support his conviction on Count I (conspiracy to possess methamphetamine), and Worshek argues that there was insufficient evidence to support his conviction on Count IV (distribution of methamphetamine during the second controlled buy). The following standard of review applies to both arguments:

> We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. This standard of review is strict; we will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.

*United States v. Hamilton*, 332 F.3d 1144, 1148–49 (8th Cir. 2003) (internal quotations and citation omitted).

### 1. *Sufficiency as to Scofield*

Sufficient evidence supports Scofield's conviction of conspiracy. Scofield, relying on *United States v. Rios*, 171 F.3d 565, 566 (8th Cir. 1999), contends that Johnson's status as a confidential informant working for the government negates his ability to have unlawfully conspired with Johnson. In *Rios*, we stated "[i]t is of course a well-established rule that 'there can be no indictable conspiracy involving only the defendant and government agents and informers.'" *United States v. Rios*, 171 F.3d 565, 566 (8th Cir. 1999) (quoting *United States v. Nelson*, 165 F.3d 1180, 1184 (8th Cir. 1999)). However, the very authority that he cites for support undermines Scofield's argument. Scofield is correct that no conspiracy could have existed between

him and the confidential informant during the two controlled buys. But, here, as in *Rios*, the record contains ample evidence that Scofield knew of and participated in a conspiracy to distribute methamphetamine prior to the controlled buys. *Id*.

In this case, Johnson testified that he purchased methamphetamine from Scofield on several occasions prior to the controlled buys. Johnson testified that each of these transactions involved approximately one ounce of methamphetamine. Each time, Scofield would "front" the ounce to Johnson. Two weeks later, Johnson would repay Scofield for the prior ounce and would receive another fronted ounce. The continuing nature of these transactions establishes an agreement between Scofield and Johnson that Johnson would resell the drugs to others in order to repay Scofield. Moreover, evidence at trial showed that a mere user of methamphetamine commonly purchases in quantities ranging up to half of a gram. Johnson received more than 50 times that amount in each transaction with Scofield. Combined with the credit arrangement, a reasonable jury could conclude that there was an agreement to possess and distribute methamphetamine to persons known or unknown to Scofield.

Finally, evidence of such an agreement comes from Johnson's testimony that he once made a partial payment to Scofield and explained that he could not pay in full because "nobody was buying." This testimony, in conjunction with the regular transactions involving large quantities of fronted methamphetamine, provides sufficient evidence that there was an agreement between Scofield and Johnson to possess and distribute methamphetamine before Johnson became an agent for the government. *See United States v. Ramirez*, 350 F.3d 780, 783 (8th Cir. 2003) (setting forth the essential elements of a conspiracy offense). Scofield attacks the credibility and coherence of Johnson's testimony but such disputes are issues for the jury to decide. *United States Osuna-Zepeda*, 416 F.3d 838, 842 (8th Cir. 2005).

## 2. *Sufficiency as to Worshek*

The evidence supporting Worshek's conviction is much less convincing. In fact, we hold that the evidence was insufficient to support Worshek's conviction. The evidence established that Worshek was a "lay about," or a "mooch," but did not prove beyond a reasonable doubt that he knowingly and intentionally possessed or distributed, or aided and abetted the possession or distribution of, methamphetamine. The government proved Worshek was present but more is required to establish guilt than "mere presence." "Mere physical proximity to contraband is insufficient to convict a person of possession with intent to distribute." *United States v. Cruz*, 285 F.3d 692, 697 (8th Cir. 2002) (brackets omitted) (citing *United States v. Lemon*, 239 F.3d 968, 970 (8th Cir. 2001)). However, "[p]ossession of contraband can either be actual or constructive." *Id*. Constructive possession occurs if there is (1) knowledge of the presence of the contraband, combined with (2) control or dominion over either the contraband itself or the premises in which the contraband is concealed. *Cruz*, 285 F.3d at 697; *Lemon*, 239 F.3d at 970. We have held that it takes more evidence of knowledge and control to prove that a defendant constructively possessed contraband found in someone else's residence, as opposed to his own abode. *Cruz*, 285 F.3d at 697 (citing *United States v. Brett*, 872 F.2d 1365, 1369 (8th Cir. 1989)).

While the evidence showed that Worshek had access to Scofield's home and was often present, a reasonable jury could not conclude that Worshek had constructive possession of the contraband. Johnson's assumption that Worshek retrieved a box from the garage does not establish that Worshek was involved in a drug transaction.[4]

---

[4]While on one occasion Worshek stated that he and Scofield were the only "importers" of methamphetamine, the district court concluded that the statement was puffery in the context of the overwhelming lack of evidence that Worshek was involved in a conspiracy to possess and distribute methamphetamine to Johnson. The district court pointed out the following in support of its conclusion: (1) there was no

-8-

Johnson acknowledged he did not see what happened in the kitchen. He could not see who went outside, where that person went, and if that person brought anything back into the house. Scofield, not Worshek, gave Johnson the box containing the methamphetamine. The box of drugs and a bag from within it carried Scofield's fingerprints but not Worshek's. The government presented no evidence that Worshek knew the drugs were stored in the garage. Moreover, Johnson testified that he never had any conversations with Worshek regarding the consummation of actual sales of drugs. In fact, Johnson testified that he talked about drug transactions only with Scofield. Proximity and association, without more, are insufficient to establish Worshek's guilt.

## B. *404(b) Evidence*

Scofield argues that testimony of (1) his possession of methamphetamine paraphernalia; (2) his consumption of methamphetamine; and (3) Johnson's passing reference to Scofield's "felonies" during cross-examination violated Federal Rules of Evidence 404(b). Rule 404(b) prohibits admission of evidence of other crimes, wrongs or acts to show a defendant is a bad person. Scofield did not object to the admission either (1) or (2) at trial so we review for plain error. *Olano* provides the following four-part test that governs plain error review:

> before an appellate court can correct an error not raised at trial, there must be (1) "error," (2) that is "plain," and (3) that "affects substantial rights."  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."

evidence of Worshek selling, accepting, or delivering methamphetamine; (2) Worshek did not direct the distribution activities of Scofield or anyone else; and (3) there was no evidence that Worshek received any proceeds from the sale of methamphetamine.

*Johnson v. United States*, 520 U.S. 461, 466–467 (1997) (brackets and citations omitted) (interpreting *United States v. Olano*, 507 U.S. 725, 734–35 (1993)).

Scofield fails to meet his burden to show plain error in the admission of evidence of his use of methamphetamine and his possession of methamphetamine paraphernalia. The government contends that it used this evidence to prove that Scofield knew that the substance he was distributing was indeed methamphetamine. As the government correctly states, knowledge is one of the permissible purposes for other-act evidence under Rule 404(b). The district court's admission of the evidence for that purpose was not plain error.

Similarly, the district court did not err by refusing to grant a mistrial because of Johnson's statement involving Scofield's prior "felonies." Scofield believes this statement unfairly prejudiced him because he had, in fact, only been convicted of one prior felony. Scofield did not object contemporaneously to Johnson's statement, but his defense counsel did move for a mistrial the next day based upon the remark. The district court denied the motion but issued a limiting instruction informing the jury that the parties had stipulated that Scofield had been convicted of a felony. We hold that this limiting instruction was sufficient to cure any error that may have occurred as a result of Johnson's comment.

III. *Conclusion*

We affirm the conviction of Scofield in all respects. The district court properly denied his motion for acquittal on Count I as sufficient evidence supported Scofield's knowing involvement in a conspiracy to possess and distribute methamphetamine. We further hold that Scofield's claims that there was plain error under Fed. R. Evid. 404(b) must fail. With respect to Worshek, we reverse the district court's order

denying Worshek's motion to enter a judgment of acquittal on Count IV because we find that there was insufficient evidence to support his conviction.

_____